## George E. Warren Co., Appellant, *v.* Wentz.

*Appeals—Findings of fact by jury—Evidence.*

1. In a common law action, the findings of fact by a jury will be sustained if there is substantial evidence to support them.

*Contract—Breach—Measure of damages—Payment of money to third party.*

2. In an action for breach of contract, plaintiff's damages are to be measured by the loss actually and necessarily sustained because of the breach; he cannot recover for moneys which he paid to a third party, though the latter's claim could not have arisen but for the contract with the defendant, if plaintiff was under no legal liability to pay the claim, especially if defendant denied all responsibility prior to the time of payment.

Argued October 7, 1924. Appeal, No. 54, Oct. T., 1924, by plaintiff, from judgment of C. P. Cambria Co., Sept. T., 1919, No. 240, on verdict for defendant, in case of George E. Warren Co. v. R. J. Wentz. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit on a contract. Before BELL, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for defendant for $9,944.45. Plaintiff appealed.

*Errors assigned* were various rulings and instructions, quoting record, and (20) order overruling motion for judgment n. o. v., quoting record.

*P. J. Little,* with him *Charles O. Pengra* and *Evans & Evans,* for appellant.—It is the general rule of law that, in the absence of any authority, either expressed or implied, an agent cannot employ a subagent. But where the principal recognizes the contract of the subagent and partially performs it, he is bound by the terms there-

of: McGonigle v. Ins. Co., 168 Pa. 1, 11; McCully v. R. R., 32 Pa. 25; Mayer v. McLure, 36 Miss. 389; Blantin v. Whitaker, 30 Tenn. 313; Tynan v. Dulling, 25 S. W. 465.

Wentz ratified the Marshall contract by not disavowing it after receiving the so-called "Registry" of price. It was the business of Wentz, if he did not wish to be bound by the contract of such subagent, to promptly disavow it. This he did not do.

*D. P. Weimer,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, November 24, 1924:

Plaintiff sued to recover damages for defendant's alleged breach of contract; the latter denied liability and counterclaimed to obtain the value of coal delivered to plaintiff under the contract; the jury found a verdict for defendant, with a certificate in his favor for the amount claimed, and plaintiff now appeals from the judgment entered thereon. The amount due by plaintiff to defendant for the coal actually delivered is admitted; the only dispute is as to plaintiff's right to recover the damages for which it brought suit. The facts regarding this claim are as follows:

By the agreement between them, defendant appointed plaintiff his exclusive agent for the sale of the entire output of his Petroia coal mines, plaintiff agreeing to sell the coal "for the highest market price at all times,......to register with [defendant] all prices on contracts and orders," it being "understood and agreed in case R. J. Wentz [defendant] disposes of his Petroia mines within the time period covered by this agreement, Mr. Wentz shall arrange with his successors to the effect that all contracts or obligations which the Warren Company [plaintiff] may have on Wentz's Petroia coal shall be properly taken care of until expiration of the same." The parties agree that, under this clause, a sale of the mines was intended to and would

terminate the agency, so far as concerned future sales of coal, but that defendant was required to arrange with the purchasers to continue supplying coal under outstanding contracts then binding on him.

It is claimed that shortly after the making of this contract, plaintiff, through an alleged subagent, made a written agreement with Marshall & Co., to deliver to the latter one-half of the output of the mines, for a period of ten months, the agreement further providing that "every effort will be made for the prompt and faithful fulfillment of this contract, but seller will not be responsible for the delivery of the [coal] if prevented by......any occurrence beyond seller's control." A copy of a portion of this agreement was sent by plaintiff to defendant; it purported to be executed by the subagent for itself only, and did not disclose that it was made on behalf of plaintiff, or that the latter was thereby contracting as selling-agent for defendant.

During the period covered by the two agreements, defendant sold his mines. It is conceded that, until the consummation of the sale, he made all the deliveries required of him; but he did not arrange with the purchaser of the mines to carry out the agreement with Marshall & Co., during the balance of the term provided in it, because as he, defendant, says he did not know it was entered into by virtue of the sales-agency contract. Being unable to get further coal, Marshall & Co. threatened suit; plaintiff called defendant's attention to this, but he denied all liability, whereupon plaintiff settled the claim for a sum to which defendant could not properly object, if he was liable for anything. Plaintiff admits that if defendant was ignorant, as he says he was, he cannot be held liable for the damages paid to Marshall & Co., but avers he was made fully acquainted with all the facts, and hence was responsible for the payment thus made, which it seeks to recover in the present action; in its brief stating that "The only question in this case [on the trial] was: Did Wentz ratify the Marshall contract, after full knowledge of its terms?" There

can be no doubt but that, in order to recover, plaintiff was required to establish this fact, for the contract between the parties specifies that defendant was to receive "the highest market price at all times." Unless, therefore, he knew and ratified the contract with Marshall & Co. for a fixed sum per ton during that contract period, he was not liable in any amount, since, without such a ratification, the contract price payable by them was the highest market price obtainable at the times fixed for deliveries, and hence, as the two prices were always the same at those times, there could be no damages.

Judging from the cold type, the weight of the evidence upon this vital issue would seem to be with plaintiff; but the truth of its averment on that question was disputed by defendant, whose testimony was, to some degree, supported by the fact that the portion of the subcontract sent to him did not show the alleged subagent had made it on plaintiff's behalf. As has been stated, the jury believed defendant's evidence on this point, and their verdict in his favor was sustained by the court below. Under such circumstances, we cannot, in this common law action, overthrow the findings of the accredited trier of the facts (Hagan Lumber Co. v. Duryea School District, 277 Pa. 345), and hence the judgment must be affirmed.

The same conclusion is reached from another standpoint. The sale of the mines and defendant's refusal to further deliver coal, were each "an occurrence beyond the seller's [plaintiff's] control," within the meaning of that clause in its contract with Marshall & Co. This being so, the latter had no legal right to recover from plaintiff for failure to continue deliveries, and the mere fact that it chose to settle with that firm, without interposing this defense, would not make defendant responsible, especially as he denied all liability prior to the time of settlement.

What has been said relieves us from considering the twenty-two assignments of error in detail.

The judgment of the court below is affirmed.